UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

CIVIL ACTION NO. 4:07-CV-10

DONNA L. ASSELMEIER;
VIOLA DAME; WILLIAM DAME;
EVELYN HEMMENS;
DON F. BALLENGER;
and KATHY SCHER                                                                PLAINTIFFS

V.

WEBSTER COUNTY COAL, LLC;
ALLIANCE COAL, LLC; ALLIANCE
LAND, LLC; and SGP LAND, LLC                                                   DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court upon a motion by the Defendants for partial summary judgment on the Plaintiffs' claim for willful trespass (DN 21) and a motion by the Plaintiffs for partial summary on their claim of innocent trespass (DN 22). Fully briefed, these matters are ripe for consideration. For the following reasons, the Defendants' motion is **GRANTED** and the Plaintiffs' motion is **DENIED**.

### I. FACTS

The Plaintiffs (the "B.B. Dame Heirs") allege that they are the 100% owners of a coal estate in Hopkins County, Kentucky, which covers approximately 75.75 acres. Between December 2004 and July 2006, the Defendants mined and sold coal from this property. Because the coal was mined without the permission of the Plaintiffs, the Plaintiffs contend that the Defendants are liable to them for trespass.

In 2000, the Defendants began planning an extension of their coal-mining operations into a coal seam underlying the Plaintiffs' property. The Defendants retained the law firm of Stoll,

Keenon, and Park, LLC , ("Stoll Keenon") to perform the requisite title work. On February 9, 2000, Stoll Keenon provided the Defendants with a "Preliminary Title Report." In this Report, Stoll Keenon identified the property as a 106.75-acre tract in which the coal estate was owned by 12 individuals with varying interests. The Report identified one of the individuals, B.B. Dame, as having a 1/6 interest in the coal estate. Sam Crawford, one of the Defendants' land managers, suspected that this Report contained erroneous information regarding the boundaries and actual acreage of the property.

However, on June 6, 2001, Stoll Keenon issued a "Title Opinion" confirming the acreage and owners identified in its Preliminary Title Report. This Title Opinion repeated that B.B. Dame or his heirs owned only a 1/6 undivided interest in the coal estate and 11 other individuals or their heirs owned fractions totaling 5/6.

Based upon the Preliminary Report and Title Opinion, the Defendants began the process of locating the identified owners of the property. In 2001 and 2002, Defendant SGP entered into five Coal Lease Agreements with "the Claytons" who, according to the Preliminary Report and Title Opinion, owned a collective 13.3% interest in the property. After obtaining these leases, the Defendants began mining in the coal seam on the property.[1] The Defendants asked Donald Clayton, one of the lessors, to help find the remaining owners, including the "B.B. Dame Heirs" identified in the Preliminary Report and Title Opinion.

In July 2005, shortly after mining on the property had begun, Stoll Keenon modified its 2001

---

[1] In Kentucky, a co-tenant may lease his undivided interest in "joint real property for oil and other minerals." York v. Warren Oil & Gas Co., 229 S.W.114 (Ky. 1921). At that time, the lessee becomes a co-tenant who may enter upon the joint property and explore for, mine and market minerals, but he must account "to the other joint tenants for their proportion of the mineral recovered." Id.

Title opinion to clarify that a portion of the tract described therein was, in fact, not a part of the property; as a result, the tract acreage subject to the 2001 Title Opinion was reduced from 106.75 to 75.75 acres.

In January 2006, after most of the mining on the property was complete, Donald Clayton told John Harris, another land manager employed by the Defendants, that he had located one of the B.B. Dame heirs - Plaintiff Donna Asselmeier of Illinois. When Harris contacted Asselmeier, she informed him of a 1935 Deed to B.B. Dame, from all of the other fractional owners listed in Stoll Keenon's title opinions, which purportedly consolidated 100% ownership of the property in B.B. Dame.

Following this conversation, the Defendants contacted Stoll Keenon and asked them to check the 1935 Deed. After locating the deed, Stoll Keenon issued a Supplemental Title Opinion on February 8, 2006. This Opinion confirmed sole title belonged to B.B. Dame (or his heirs), subject to numerous exceptions and possible outstanding interests in the property. The Opinion also explained that the 1935 Deed had been missed because it had been "improperly indexed" in the Hopkins County Clerk's Office.

Despite Asselmeier's notice that the B.B. Dame heirs were the 100% owners of the property, the Defendants mined 6796.82 tons of coal in January and February 2006. Although the Defendants offered to lease the Plaintiffs' interest in the coal and to pay them royalties for all coal mined and to be mined in the future from the property, a deal between the parties could not be reached. Eventually, the Plaintiffs' attorneys requested that the Defendants cease mining operations and retreat from the coal estate. No further mining occurred on the property until July 2006, when

mining was resumed across a corner of the property.[2]

## II. LEGAL STANDARD

In order to grant a motion for summary judgment, the Court must find that the pleadings, together with the depositions, interrogatories and affidavits, establish that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The moving party bears the initial burden of specifying the basis for its motion and of identifying the portion of the record which demonstrates the absence of a genuine issue of material facts. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party themselves thereafter must produce specific facts demonstrating that a genuine issue of fact exists for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party is required to do more than simply show that there is some "metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Co., 475 U.S. 574, 586 (1986). The Rule requires the non-moving party to present "specific facts showing there is a genuine issue for trial." Fed. R. Civ. P. 56(e). "The mere existence of scintilla of evidence in support of the [non-moving party's] position will be insufficient, there must be evidence on which the jury could reasonably find for the [non-moving party]." Anderson, 477. U.S. at 252.

## III. ANALYSIS

### A. The Defendants' Motion for Partial Summary Judgment

As noted above, the Defendants have moved for partial summary judgment on the Plaintiffs'

---

[2] The Defendants do not seek summary judgment on the willful trespass claim related to the 6500 tons of coal mined in July 2006.

claim of willful trespass.³ The Defendants argue that their trespass cannot be considered "willful" because they relied upon the advice of counsel to determine title to the property. The Plaintiffs, on the other hand, contend that a jury could find that the Defendants' trespass was "willful" since there is evidence that the Defendants were not acting in good faith, or under an honest conviction that they were in the right, when they committed the trespass.⁴

In Kentucky, the law is that "every trespass is presumed willful, with the burden upon the trespasser to prove his innocence." Church and Mullins Corporation v. Bethlehem Minerals Company, 887 S.W.2d 321, 323 (Ky. 1992) (citing Swiss Oil Corporation v. Hupp, 69 S.W.2d 1037, 1041 (Ky. 1934)). The test of willfulness is "whether a trespass was perpetrated in a spirit of wrongdoing, with the knowledge that it was wrong, or whether it was done under a bona fide dispute, as where the circumstances were calculated to induce or justify the reasonably prudent man, acting with a proper sense of the rights of others, to go in and to continue along the way." Id. "[T]he primary test to be applied is the intention, or the state of mind, of the trespasser based upon the circumstances surrounding the trespass at the time the trespass occurred." Id. at 324 (citing Hupp). "The trial court must review the totality of the circumstances surrounding the trespass to determine whether the trespasser '...was acting in good faith and under an honest conviction that he was right

---

³In their motion, the Defendants also argued that Defendant Alliance Land, LLC, should be dismissed as a party. However, the Defendants subsequently withdrew that portion of their motion. (DN 27, Defendants' Reply, p. 15).

⁴The distinction between a willful trespass and an innocent trespass is important because if affects the amount of recovery. Willful trespassers are required to pay complete restitution without credit for the expenses incurred for extracting minerals from the property of another. See, e.g., Lebow, 394 S.W.2d at 776; Hupp, 69 S.W. 2d at 555. On the other hand, if the trespass is innocent, and the rightful owner could not extract the minerals himself, the measure of recovery is fixed at the value of the mineral as it lay in the ground, "the customary and reasonable royalty being the best proof of that value." Bowman v. Hibbard, 257 S.W.2d 550, 552 (Ky. 1952)(citing Hughett v. Caldwell County, 230 S.W.2d 92, 96 (Ky. 1950)).

in his assumption.'" Id. (citing Hupp, 69 S.W.2d at 1041). Kentucky courts have stated that "a willful trespasser *knows he is wrong*; and an innocent trespasser *believes he is right*." Lebow v. Cameron, 394 S.W.2d 773, 776 (Ky. 1965).

The evidence here suggests that the Defendants believed they had rightfully obtained permission to mine the coal on the disputed property after they obtained the five leases from the Claytons in 2001 and 2002. At that time, the Defendants' counsel had submitted to them a Preliminary Title Report and a Title Opinion which identified the Claytons as individuals who owned undivided interests in the coal estate. The Defendants' reliance on counsel supports a finding that their initial trespass was in good faith. In Lebow, the court held that a trespasser did not recklessly or ruthlessly move in on another's rights where he reasonably relied upon the advice of counsel regarding another's claim of title, even though such advice proved bad. 394 S.W.2d 773 at 777.

The Plaintiffs argue, however, that a jury could reasonably conclude that the Defendants' trespass was not innocent because the evidence shows that the Defendants knew that the first Title Report and June 2001 Title Opinion provided by Stoll Keenon were not entirely accurate. The Court, however, disagrees. It is true that one of the Defendants' land managers testified that he suspected that the reports did not accurately identify the number of acres contained in the coal tract. However, he also testified that he had no reason to believe that the reports contained any other inaccuracies - especially as to who owned interests in the coal tract or how much they owned. He further stated that, prior to the events in question, Stoll Keenon had done a substantial amount of title work for the Defendants and that the firm had never before incorrectly identified title owners. Thus, based on the initial title reports obtained by the Defendants from Stoll Keenon in 2000 and

2002, the Court holds that a reasonable jury could not conclude that the Defendants acted in bad faith or unreasonably when, after obtaining five leases from identified title holders, they began to mine the property in December 2002.

Therefore, the Defendants' motion for partial summary judgment on the Plaintiffs' claim for willful trespass is **GRANTED**.

**B. The Plaintiffs' Motion for Partial Summary Judgment**

In their motion for partial summary judgment, the Plaintiffs argue that they are entitled to judgment as a matter of law on their claim for trespass. The Defendants contend that summary judgment is inappropriate because the Plaintiffs have not proven their title to the subject property.

To support an action for trespass, the plaintiff must prove: a) title of record from the Commonwealth or from a source shown to be common with that claimed by the defendant; b) title by adverse possession; or c) actual possession at the time of the invasion of his rights. Marinaro v. Deskins, 344 S.W.2d 817, 819 (Ky. 1961).

While it appears that Plaintiffs will have little trouble in proving their title, the Defendants are technically correct that title has not been proven sufficiently to warrant summary judgment at this time. Certain documents in the record seem to support Plaintiffs' title claim, however, not all those documents have been properly authenticated and some contain hearsay. See, e.g., Lucas v. Chance, 121 Fed. Appx. 77, 79 (6th Cir. 2005 )("It is well-established in this circuit that otherwise inadmissible hearsay evidence may not be used to support or oppose a motion for summary judgment."); Fireman's Fund Ins. Co. v. Thien, 8 F.3d 1307, 1310 (8th Cir. 1993)(holding that inadmissible evidence may not be used to support or defeat a summary judgment motion).

The Plaintiffs may re-submit their motion for summary judgment. They should support it

with an affidavit of a title examiner who has examined the relevant and properly indexed records of Hopkins County related to the subject property. The affidavit should set out the chain of title back to a common source and it should include certified copies of all documents in the chain. Thereafter, the Defendants may respond in an attempt to show the existence of genuine issues of fact for trial.

## IV. CONCLUSION

For the foregoing reasons, the Defendants' motion for partial summary judgment is **GRANTED** and the Plaintiffs' motion for partial summary judgment is **DENIED**.

**IT IS SO ORDERED**.

cc: Counsel of Record